## W. A. BOWDEN v. THE STATE.

### No. 2895.   Decided March 25, 1904.

**Embezzlement—Evidence.**

  See opinion for evidence held insufficient to support a conviction for embezzlement.

Appeal from the District Court of Lamar.   Tried below before Hon. Ben H. Denton.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief for appellant has reached the hands of the Reporter.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged with embezzlement—the amount of money being alleged at $317.   There are several questions raised for discussion, but, as we understand this record, it is sufficient to state that in our judgment the evidence does not sustain the conviction.   Appellant was the father-in-law of the alleged injured principal, Mrs. Jesse Bowden.   When her husband died, the Woodmen of the World, of which society he was a member, paid her $500.   She turned the money over to appellant, as she testified on the trial, to pay off the indebtedness due by her deceased husband, with the further injunction that he lend the remainder on good security at 10 per cent.   His statement and his evidence all show that he borrowed the excess of the $500 after paying the indebtedness of his deceased son, with the understanding he was to pay his daughter-in-law the money as she called for it, or furnish her the necessaries of life.   After her husband's death, she lived with her father-in-law for about five months.   There seems to have been no trouble in regard to the money during this time, nor for some time afterward, although she knew appellant was using the money as his own; and not even until after she removed from Lamar to Red River County.   His statement in regard to the matter is borne out by quite a lot of facts and circumstances, and the testimony of others; even by the letters of his daughter-in-law and some of her statements to others.   On one occasion she wrote to appellant:  "Kind Father:   I will drop you a few lines to let you know how we are getting along.   We are all well.   Hope you are all well.   Well, Mr. Bowden, I looked for the money and note you was going to send me.   Send it to me, for I need it.   Send the horses; I need them every day."   The remainder of the letter is with reference to some cattle left with her father-in-law in Lamar County.   The next letter was some two and one-half months later, and written from the same point:  "Kind Father:   I will answer your letter I re-

ceived Thursday. I got the money you sent me, and was glad to get it; but that was not enough to pay Gertie's doctor bill. I need groceries and everything else. I can get nothing on time. You promised me that you would pay me all of my money after Christmas. I have got to have it sure. You will please send it to me. If you don't send it I will sue you sure, for I have got to have it some way. I can not do without it," etc. Some of the witnesses testifying were business men, merchants, etc.; and the testimony of some of them is to the effect that from statements made and conversations had with appellant, in the presence of his daughter-in-law, he had borrowed the money from her, and was paying some of his own indebtedness with it while she was present with him. There is a considerable amount of testimony in the case going into a great many of the details of conversations and troubles (family and otherwise) of appellant running over a considerable length of time. Finally, Phillips became mixed up with the case. He seems to have been a brother-in-law of the alleged owner and principal. His connection with the case occurred some time after the original transaction in which appellant became possessed of the money. After his connection there were threats of prosecution unless appellant paid the money. Appellant being unable to meet these demands, the grand jury was resorted to and a bill of indictment found. It is possible that appellant is guilty of embezzlement; but, in our judgment, the testimony does not sufficiently show it. In fact, it occurs to us that the facts strongly show the money was loaned to appellant, and the prosecution followed because he became unable to return all of it. It seems from the testimony that there was not $317 due; that the debts of deceased which were paid (amounting to more than the alleged owner thought) and the paying to her of money, and goods, board bills and things, reduced it below $200 in amount. The judgment is reversed and the cause remanded.

*Reversed and remanded.*